1   PATRICIA L. GLASER - State Bar No. 55668
    pglaser@glaserweil.com
2   JILL BASINGER - State Bar No. 195739
    jbasinger@glaserweil.com
3   GLASER WEIL FINK JACOBS
       HOWARD AVCHEN & SHAPIRO LLP
4   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
5   Telephone:  (310) 553-3000
    Facsimile:   (310) 556-2920
6
    Attorneys for Defendant
7   The National Retirement Fund

8   RONALD E. RICHMAN (*pro hac vice pending*)
    ronald.richman@srz.com
9   HOLLY H. WEISS (*pro hac vice pending*)
    holly.weiss@srz.com
10  JILL L. GOLDBERG (*pro hac vice pending*)
    jill.goldbergmintzer@srz.com
11  SCHULTE ROTH & ZABEL LLP
    919 Third Avenue
12  New York, New York 10022-3902
    Telephone: (212) 756-2000
13  Facsimile: (212) 593-5955

14  Attorneys for Defendant
    The National Retirement Fund

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19  COLONY CAPITAL, LLC, a                CASE NO.: CV 11-07235-R (AGRx)
    Delaware limited liability company, and
20  COLONY INVESTORS IV, L.P., a          Hon. Manuel L. Real
    Delaware limited partnership,
21                                        **NOTICE OF MOTION AND**
                      Plaintiff,          **MOTION TO DISMISS FOR**
22                                        **IMPROPER VENUE OR**
    v.                                    **TRANSFER OF VENUE**
23                                        **PURSUANT TO 28 U.S.C. § 1404(A)**
    THE NATIONAL RETIREMENT              **OR 1406(A);  MEMORANDUM OF**
24  FUND, and DOES 1 through 10,          **POINTS AND AUTHORITIES IN**
    inclusive,                           **SUPPORT THEREOF**
25
                      Defendants.         DATE:        October 17, 2011
26                                        TIME:        10:00 a.m.
                                          COURTROOM:   8
27

28
─────────────────────────────────────────────────────────────

743189

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE that on October 17, 2011, at 10:00 a.m., or as soon

3    thereafter as the matter may be heard in Courtroom 8 of the above-entitled Court,

4    located at 312 N. Spring Street, Los Angeles, California 90012, Defendant the

5    National Retirement Fund ("Defendant") will and hereby does move the Court to

6    dismiss Plaintiffs' Complaint for improper venue pursuant to Federal Rule of Civil

7    Procedure 12(b)(3) or to transfer this action pursuant to 28 U.S.C. § 1406(a) or 28

8    U.S.C. § 1404(a) to the United States District Court for the Southern District of New

9    York.

10       This Motion is based on the following grounds:

11       (1)    Venue is not proper in this district under ERISA's applicable venue

12   provision because the NRF is not administered and does not "do business" in this

13   district, as required by ERISA Section 4301(d), 29 U.S.C. § 1451(d).  Accordingly,

14   this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3)

15   (or, in the alternative, if the Court believes that venue is improper in this district but

16   that it would serve the "interests of justice" to transfer this case rather than dismiss it

17   pursuant to 28 U.S.C. § 1406(a), Defendant respectfully submits that, for the reasons

18   set forth below, the Southern District of New York is the appropriate venue to which

19   to transfer it).

20       (2)    If, however, venue is proper in this district, the case should be transferred

21   to the Southern District of New York, because venue is proper there, and the transfer

22   will serve the convenience of the parties and witnesses and will promote the interest

23   of justice.  28 U.S.C. § 1404(a).  The withdrawal liability arose in New York and

24   Rhode Island, where the NRF is administered; the employees for whom employer

25   contributions were made work in New Jersey; key witnesses and documents are

26   located in New York and New Jersey; and, Colony Capital maintains an office in

27   New York and actively engages in business in New York and New Jersey.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)**

743189

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    This Motion is based upon this Notice, the accompanying Memorandum of
2  Points and Authorities, the pleadings in this action and such other evidence and oral
3  argument as the Court may allow.
4    Although the Court's Order Re: Notice to Counsel, dated September 1, 2011,
5  waives Local Rule 7-3, we notified Plaintiffs' counsel of this Motion and, by letter
6  dated September 15, 2011, disclosed to Plaintiffs' counsel the grounds for the Motion.

7
8  DATED: September 19, 2011          Respectfully submitted,

9                                     GLASER, WEIL, FINK, JACOBS,
10                                     HOWARD & SHAPIRO, LLP

11                                     By:  _____/s/_____
12                                         Patricia L. Glaser
                                           Jill Basinger

13                                     SCHULTE ROTH & ZABEL LLP
14                                     Ronald E. Richman (*pro hac vice pending*)
15                                     Holly H. Weiss (*pro hac vice pending*)
                                       Jill L. Goldberg (*pro hac vice pending*)
16
17                                     *Attorneys for Defendant The National Retirement Fund*

18
19
20
21
22
23
24
25
26
27
28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)

743189

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................. 1

II. STATEMENT OF FACTS AND PERTINENT BACKGROUND ............... 2

    A.  The Parties .......................................................................... 2

    B.  Statutory Framework ............................................................ 4

    C.  The Complaint and Preliminary Injunction Motion ........................... 6

III. ARGUMENT ................................................................................. 8

    A.  Venue Is Not Proper In the Central District of California Under ERISA's Applicable Venue Provision.................................................. 8

    B.  If Venue is Proper in this District, the Case Should be Transferred to the Southern District of New York................................ 11

        1.  Venue is Proper in the Southern District of New York........... 12

        2.  The Relevant Case-Specific Factors Weigh in Favor of Transferring this Action to the Southern District of New York. ................................................................................. 13

    C.  The Judges in the Southern District of New York Have Fewer Filings than the Judges in this District.................................. 17

IV. CONCLUSION ............................................................................. 17

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

i

743189

# TABLE OF AUTHORITIES

## CASES

*Abrams Shell v. Shell Oil Co.*,

    165 F. Supp. 2d 1096 (C.D. Cal. 2001) ................................................................ 8

*Alcatel Lucent United States, Inc. v. Dugdale Communs., Inc.*,

    CV 09-2140, 2010 U.S. Dist. LEXIS 22226 (C.D. Cal. Mar. 5, 2010) ........ 14, 16

*Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Palladium*

    *Equity Partners, LLC*, 722 F. Supp. 2d 854 (E.D. Mich. 2010) ................ 5, 6, 15

*Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*,

    CV 06-1190, 2006 U.S. Dist. LEXIS 37641 (C.D. Cal. June 6, 2006).............. 16

*Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*,

    956 F.2d 1369 (7th Cir. 1992) ........................................................................... 14

*Commissioner v. Groetzinger*,

    480 U.S. 23 (1987) ............................................................................................. 6

*Delta Air Lines, Inc. v. W. Confer. of Teamsters Pension Trust Fund*,

    722 F. Supp. 725 (N.D. Ga. 1989)..........................................................9, *passim*

*Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*,

    16 F.3d 1386 (3d Cir. 1994) ......................................................................... 4, 14

*EUSA-Allied Acquis. Corp. v. Teamsters Pension Trust Fund of Phila. &*

    *Vicinity*, Civ. Action No. 11-3181, 2011 WL 3651315 (D.N.J. Aug. 18,

    2011) ................................................................................................................. 1

*Flowers Indus., Inc. v. Bakery & Confectionary Union & Indus. Int'l Pension*

    *Fund*,

    565 F. Supp. 286 (N.D. Ga. 1983)..................................................................... 9

*Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*,

    830 F.2d 1241 (3d Cir. 1987) ............................................................................ 4

*Flynn v. Berich*,

    603 F. Supp. 2d 49 (D.D.C. 2009)................................................................. 9, 11

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)**

743189

*Fontaine v. Washington Mutual Bank, Inc.*,

    CV 08-5659, 2009 U.S. Dist. LEXIS 41168 (C.D. Cal. Apr. 30, 2009) ............ 17

*Galgay v. Beaverbrook Coal Co.*,

    105 F.3d 137 (3d Cir. 1997) ...................................................................... 1, 5

*Holland v. King Knob Coal Co., Inc.*,

    87 F. Supp. 2d 433 (W.D. Pa. 2000) ............................................................. 12

*Lads Trucking Co. v. Bd. of Trs. Of W. Confer. Of Teamsters Trust Fund*,

    777 F.2d 1371 (9th Cir. 1985) ...................................................................... 12

*Metz v. U.S. Life Ins. Co. in City of New York*,

    674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................................................... 16

*Partee v. United Recovery Group*,

    CV 09-9180, 2010 WL 1816705 (C.D. Cal. May 3, 2010) ................................. 8

*United Food & Commercial Workers Intern. Union-Indus. Pension Fund v.*

    *Spartan Stores, Inc.*, No. 92 C 3345, 1992 WL 309545 (N.D. Ill. Oct. 20,

    1992) ......................................................................................................... 12

*Vehimax Int'l v. Jui Li Enter. Co.*,

    CV 09-6437, 2010 U.S. Dist. LEXIS 42801 (C.D. Cal. Mar. 16, 2010) ............ 12

**STATUTES**

26 C.F.R. § 1.414(c)-2 ........................................................................................ 5

29 C.F.R. § 4001.2-.3 ......................................................................................... 5

28 U.S.C. § 1404(a) ................................................................................... 1, 2, 12

28 U.S.C. § 1406(a) ..................................................................................... 1, 11

29 U.S.C § 1132(e)(2) .......................................................................................... 9

29 U.S.C. § 1301(b) ............................................................................................ 5

29 U.S.C. §§ 1381-99 ......................................................................................... 5

29 U.S.C. §§ 1381-1405 ...................................................................................... 4

29 U.S.C. § 1392(c) ........................................................................................ 5, 6

29 U.S.C. § 1399 ............................................................................................. 4, 5

iii

743189

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP



29 U.S.C. § 1401 ................................................................................5

29 U.S.C. § 1451(d) ..................................................................2, *passim*

Pension Protection Act, Pub. L. No. 109-280, 120 Stat. 780 (2006) ...................... 15

Federal Rule of Civil Procedure 12(b)(3) ................................................2

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)**

743189

1    Defendant, the National Retirement Fund (the "NRF") respectfully submits this

2    Memorandum of Points and Authorities in support of its motion to dismiss this action

3    due to improper venue or, in the alternative, to transfer this action pursuant to 28

4    U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) to the United States District Court for the

5    Southern District of New York.

6    **I.     INTRODUCTION**

7    On September 1, 2011, plaintiffs, Colony Capital, LLC ("Colony Capital") and

8    Colony Investors IV, L.P. ("Colony IV") (collectively the "Colony Parties") filed this

9    declaratory judgment action against the NRF and "Does 1-10" seeking a declaration

10   that they are not liable to the NRF for withdrawal liability payments assessed by the

11   NRF's plan sponsor pursuant to the Employee Retirement Income Security Act of

12   1974, *as amended* ("ERISA").  (Complaint, Docket No. 1 ("Cmplt.") ¶ 10.)  On the

13   same day, the Colony Parties filed a motion seeking, *inter alia,* to stay their

14   obligations to make interim payments mandated by ERISA and to toll the statutory

15   deadline for them to file an arbitration to determine arbitrable issues until this case is

16   decided.  (Motion for Preliminary Injunction Pending Declaratory Relief, Docket No.

17   5.)[1]  The Colony Parties' preemptory actions threaten to turn ERISA on its head—

18   based on the Colony Parties' mere "say-so" that they are not "employers" under

19   ERISA—and to unfairly burden the NRF and non-party witnesses (who are located in

20   New York and New Jersey) with the time and expense associated with a California

21   litigation, despite that there is no logical connection between this district and this

22   action.[2]

23

24   [1] The NRF will oppose the motion.

25   [2] It is likely that the Colony Parties avoided filing this action in the District of New
     Jersey because well-developed caselaw in the Third Circuit squarely holds that courts
26   do not have jurisdiction to entertain requests for equitable relief from ERISA's
     mandatory collection and dispute resolution procedures.  *See, e.g., EUSA-Allied*
27   *Acquis. Corp. v. Teamsters Pension Trust Fund of Phila. & Vicinity*, Civ. Action No.
     11-3181, 2011 WL 3651315, at *8-9 (D.N.J. Aug. 18, 2011); *Galgay v. Beaverbrook*
28   *Coal Co.*, 105 F.3d 137, 140-41 (3d Cir. 1997).

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1

743189

Venue is not proper in this district under ERISA's applicable venue provision because the NRF is not administered and does not "do business" in this district, as required by ERISA Section 4301(d), 29 U.S.C. § 1451(d) ("Section 4301(d)"). Accordingly, this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). If, however, venue is proper in this district, the case should be transferred to the Southern District of New York, because venue is proper there, and the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. 28 U.S.C. § 1404(a). The withdrawal liability arose in New York and Rhode Island, where the NRF is administered; the employees for whom employer contributions were made work in New Jersey; key witnesses and documents are located in New York and New Jersey; and, Colony Capital maintains an office in New York and actively engages in business in New York and New Jersey.

## II.   STATEMENT OF FACTS AND PERTINENT BACKGROUND

### A.   The Parties

This lawsuit arises out of withdrawal liability incurred by the Colony Parties when the owner and operator of the Resorts International Hotel and Casino ("Resorts"), Resorts International Hotel, Inc. ("RIH"), withdrew from the NRF. The NRF is a multiemployer pension fund which is in critical status for purposes of the Pension Protection Act. (Declaration of Richard N. Rust, dated September 12, 2011 ("Rust Decl.") ¶¶ 3, 11-18.) The NRF is administered in offices in White Plains, New York (which is located within the Southern District of New York)[3] and Lincoln, Rhode Island. (*Id.* at ¶ 5.) In addition, the NRF's business activities generally take place in New York (as well as New Jersey and Rhode Island). The NRF is governed by a board of 48 trustees, half of whom represent employers and half of whom represent the union (the "Trustees"). (*Id.* at ¶ 6.) (There are currently four vacancies.

---

[3] The Southern District of New York includes courthouses in New York City (in the Borough of Manhattan) and White Plains. It would be appropriate to transfer this case to White Plains.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

743189

1    (*Id.*))  The Trustees conduct regular meetings, generally in New York or New Jersey;

2    none of those meetings has taken place in this district.  (*Id.*)  Only one of the Trustees

3    is based in the Central District of California.  (*Id.*)  The other Trustees are based

4    primarily on the east coast.  (*Id.*)  The NRF's counsel is located in New York, New

5    York.  (*Id.* at ¶ 7.)

6        The NRF does not maintain an office in the Central District of California, nor

7    does it have bank account, telephone listing, post office box, property or other assets

8    there.  (Rust Decl. at ¶ 4.)  The NRF's activities in this district are limited to

9    collecting contributions from employers and paying pension benefits to plan

10   participants.  (*Id.* at ¶ 10.)  Of the NRF's over 435,000 plan participants, fewer than

11   five percent reside in the Central District of California.  (*Id.* at ¶ 9.)

12       Colony IV is a private equity fund, and Colony Capital is Colony IV's

13   investment manager.  (Cmplt. at ¶ 16 (alleging that "The General Partner of Colony

14   IV has a management contract with Colony [Capital] under which Colony [Capital]

15   sources investments for Colony IV and oversees those investments once they are

16   made.")  Both are Delaware entities.  (*Id.* at ¶¶ 15, 16.)  Colony Capital is a multi-

17   national business, with offices throughout the United States, Europe, the Middle East

18   and Asia, including an office in New York City at 660 Madison Avenue, from which

19   Colony Capital executives and personnel (including Colony Capital's General

20   Counsel, Ronald Sanders) operate.  (Declaration of Shannon L. Cade, dated

21   September 19, 2011 ("Cade Decl.") ¶ 12.)  According to published news reports,

22   Colony Capital has $30 billion in assets under management.  (*Id.* at ¶ 3.)  The private

23   equity funds managed by Colony Capital, including Colony IV and at least 15 other

24   funds (as reflected on Colony Capital's website), invest capital in "real estate, non-

25   performing loans, distressed assets, real estate-dependent operating companies, and

26   select commercial and residential development opportunities throughout the world"

27   and engage in "intensive post-acquisition management" of their investments.  (*Id.* at ¶

28   4, Ex. C.)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

3

743189

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Colony Capital does business in New York and New Jersey. It has availed itself of the jurisdiction of the Southern District of New York by initiating a lawsuit in that court. (Cade Decl. at ¶ 9, Ex. H.) Likewise, Colony Capital has availed itself of, and submitted itself to, the jurisdiction of the New Jersey Casino Control Commission and the Division of Gaming Enforcement of the State of New Jersey Office of the Attorney General (the "New Jersey Gaming Authorities"), including in connection with obtaining a gaming license operate Resorts. (*See* Declaration of Richard Welch in Support of the Colony Plaintiffs' Motion for Preliminary Injunction Pending Declaratory Relief Action (Docket No. 6) ("Welch Decl.") at ¶ 21; Cade Decl. at ¶ 9, Ex. H.) Moreover, although the Colony Parties' lead counsel in this action is based in California, he regularly provides legal services in New York (where his law firm has a large office). (Declaration of Ronald E. Richman, dated September 19, 2011 ("Richman Decl."), at ¶ 2.)

**B.   Statutory Framework**

Congress amended ERISA in 1980 by enacting the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. §§ 1381-1405. In enacting the MPPAA, Congress sought to "protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." *Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1243 (3d Cir. 1987) (internal citations and quotations omitted). The MPPAA sets forth a carefully integrated system for the resolution of disputes concerning withdrawal liability. Following an employer's withdrawal, "[t]he plan sponsor calculates withdrawal liability, notifies the employer, and demands payment" in accordance with the plan's payment schedule. *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386, 1388 (3d Cir. 1994) (citing Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1)). The employer may then ask the plan sponsor to review its determination, and the plan sponsor may respond. *See* Section 4219(b)(2) of ERISA, 29 U.S.C. § 1399(b)(2). Any dispute

4

743189

1   remaining thereafter between an employer and the plan sponsor concerning a

2   determination made by the plan sponsor under Sections 4201 through 4219 of ERISA,

3   29 U.S.C. §§ 1381-99, including whether a "principal purpose of any transaction is to

4   evade or avoid liability under this part,"[4] must be resolved in a timely initiated

5   arbitration. Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). While the

6   arbitration proceeds, employers are required to make interim payments. 29 U.S.C.

7   §§ 1399(c)(2), 1401(d); *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 139 (3d Cir.

8   1997).

9           Pursuant to ERISA, entities within the same "controlled group" as the

10  contributing employer are liable for their allocable share of the unfunded vested

11  benefits of a pension fund if the employer ceases to have an obligation to contribute

12  to the pension fund. 29 U.S.C. § 1301(b); 29 C.F.R. §§ 4001.2-.3. To be an

13  "employer" in the same controlled group, entities must be (1) "trades or businesses"

14  and (2) have a parent-subsidiary relationship or a brother-sister relationship. 26

15  C.F.R. § 1.414(c)-2. Two authorities have held that private equity funds (and their

16  limited partnerships, general partners and management companies) are "trades or

17  businesses" for purposes of ERISA that can be held liable for the withdrawal liability

18  incurred by the portfolio companies in which they invest: (i) a September 26, 2007

19  PBGC Letter (the "PBGC Letter") (*see* Cade Decl. ¶ 8, Ex. G), and (ii) a summary

20  judgment ruling from the United States District Court for the Eastern District of

21  Michigan. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium*

22  *Equity Partners, LLC*, 722 F. Supp. 2d 854 (E.D. Mich. 2010). In so holding, the

23  PBGC and Eastern District of Michigan considered the private equity funds' level of

24  influence and control over their portfolio company investments, including their

25

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

---

26  [4] ERISA Section 4212(c) provides that "[i]f a principal purpose of any transaction is

27  to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C.

28  § 1392(c).

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)

743189

1  involvement (whether directly or through a management company) in the day-to-day

2  operations of those entities, including employment, operational and financial matters.

3  *Palladium*, 722 F. Supp. 2d at 870; PBGC Letter at 10-14 (Cade Decl. ¶ 8, Ex. G).[5]

4  ### C.  The Complaint And Preliminary Injunction Motion

5  The Colony Parties filed this action seeking a declaration that they are not

6  liable to the NRF for withdrawal liability.  Specifically, they seek a declaration that

7  they are not "employers" under ERISA and that a principal purpose of a 2009

8  transaction in which they forfeited their ownership interest in the contributing

9  employer was not to evade or avoid withdrawal liability.  Section 4212(c) of ERISA,

10  29 U.S.C. § 1392(c).  On the same day as they filed the Complaint, the Colony Parties

11  filed a motion for a preliminary injunction, seeking, *inter alia*, a stay of their

12  obligations to make interim payments mandated by ERISA and to toll the deadline to

13  file a claim in arbitration pending resolution of the declaratory judgment action.

14  As described in the Complaint, the NRF's plan sponsor's assessment of

15  withdrawal liability against the Colony Parties arose from their ownership and

16  operation of Resorts, a hotel and casino in Atlantic City, New Jersey.  In 2001,

17  Colony IV (through Colony RIH Holdings, Inc. ("Colony RIH")) purchased a 95

18  percent ownership interest in Resorts International Hotel and Casino, Inc. ("RIHC"),

19  which, through RIH, owned Resorts.  (Cmplt. at ¶ 20.)  RIH was obligated to

20  contribute to the NRF on behalf of its employees who worked for Resorts in New

21  Jersey who were members of UNITE HERE Local 54, pursuant to the collective

22  bargaining agreement between RIH and the union (the "Collective Bargaining

23

24  [5] In determining whether an entity is a "trade or business," the PBGC and the Eastern District of Michigan applied the test articulated in *Comm'r v. Groetzinger*, 480 U.S.

25  23 (1987), for the purposes of distinguishing trades or businesses from purely personal activities or investments.  PBGC Letter at 10; *Palladium,* 722 F. Supp. 2d at

26  867-69.  The *Groetzinger* test has two prongs:  (1) whether the taxpayer is engaged in an activity with "the primary purpose of income or profit," which is a "subjective test

27  that looks at the taxpayer's intent," and (2) "'whether the act is conducted with 'continuity and regularity,'" which is "an objective test that looks at how much time

28  the taxpayer typically engages in the activity."  PBGC Letter at 10.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

6

743189

Agreement"). (Rust Decl. at ¶ 14.) After the acquisition, the Colony Parties were actively involved in the management of RIH and Resorts in New Jersey. For example:

- The Colony Parties appointed Thomas Barrack, Founder, Chairman, and Chief Executive Officer of Colony Capital as the Treasurer and a Director of RIH. Mr. Barrack was also the Treasurer and a Director of Colony RIH. (Cade Decl. at ¶ 5, Ex. D.)
- The Colony Parties touted plans to expand and improve Resorts' property in New Jersey, including plans to build a new 500 room hotel tower. (Id. at ¶ 6, Ex. E.)
- Colony Capital applied for and received a gaming license for purposes of operating the casino at Resorts (and, subsequently, other casinos). (*Id.* at ¶ 7, Ex. F.)

In 2009, RIH defaulted on a $360 million loan from Column Financial ("Column"), which is a subsidiary of Credit Suisse, and other lenders. (Cmplt. at ¶ 24.) To settle the lenders' claims, the Colony Parties agreed to a "deed in lieu of foreclosure" transaction. (*Id.* at ¶¶ 22, 24, 27.) At the same time, Colony IV assigned all of its ownership interest in Colony RIH (and, accordingly, RIH) to Nicholas Ribis, who previously owned five percent of Colony RIH, in exchange for no consideration from Mr. Ribis (the "2009 Transaction"). (*Id.* at ¶¶ 27-28.)

Upon information and belief, the 2009 Transaction was negotiated by parties primarily located in New York, New York, where Column has its administrative offices and where all of the following were (at the time of the transaction) located: Column's counsel at Skadden, Arps, Slate, Meagher & Flom LLP's New York City office, the Colony Parties' counsel at Wilkie Farr & Gallagher LLP, Colony Capital's General Counsel (Mr. Sanders) and Mr. Ribis.[6] (Richman Decl. at ¶¶ 3, 4.)

[6] Mr. Ribis once shared office space with Mr. Sanders in Colony Capital's New York office. (Cade Decl. at ¶ 13.)

743189

1  Significantly, many of the deal documents relating to the 2009 Transaction are

2  governed by New York law.  (*See* Welch Decl. Exs. 3, 4, 5 & 7.)  In addition, in some

3  of those deal documents, the Colony Parties expressly agreed to submit disputes to

4  state and federal courts in New York State.  (*Id.* at Exs. 3, 5 & 7.)

5      In December 2010, RIH completely withdrew from the NRF as the result of the

6  sale of Resorts to DGMB Casino LLC.  (Petrocelli Decl. Ex. M; Rust Decl. ¶ 18.)  In

7  January 2011, the NRF assessed withdrawal liability against the Colony Parties as

8  members of RIH's controlled group, and demanded payment in accordance with the

9  NRF's payment schedule.  (Petrocelli Decl. Exs. B, C; Rust Decl. ¶ 18.)  In addition

10  to assessing liability against each of the Colony Parties, the NRF also assessed

11  withdrawal liability against RIH, Mr. Ribis, and Colony RIH.  (Rust Decl. ¶ 18.)  The

12  Colony Parties sought review of the assessment, and the NRF responded, confirming

13  the assessment.  (Petrocelli Decl. ¶¶ 5, 9, 10.)  Rather than commencing an arbitration

14  in New York on the evade or avoid issue, the Colony Parties commenced this action

15  and immediately filed a motion seeking, among other things, to delay indefinitely the

16  arbitration.[7]

17  **III.**   **ARGUMENT**

18      **A.**   **Venue Is Not Proper In The Central District Of California Under**

19          **Erisa's Applicable Venue Provision.**

20      The Colony Parties bear the burden of establishing that venue is proper in this

21  district.  *Partee v. United Recovery Group*, CV 09-9180, 2010 WL 1816705, *2 (C.D.

22  Cal. May 3, 2010).  "The venue statutes are generally intended to protect a defendant

23  from being forced to defend in an unfair or inconvenient forum," *Abrams Shell v.

24  Shell Oil Co.*, 165 F. Supp. 2d 1096, 1106 (C.D. Cal. 2001), and "to place the trial in

25

26  _____

[7] RIH and the members of its controlled group are bound to arbitrate withdrawal

27  liability disputes before the American Arbitration Association in New York, New

    York pursuant to the Agreement and Declaration of Trust, UNITE HERE National

28  Retirement Fund (as amended) (the "Trust Agreement").  (Rust Decl. at ¶ 17, Ex. 1.)

8

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

743189

1  a place having a logical connection with the parties to the litigation." *Delta Air Lines,*
2  *Inc. v. W. Confer. of Teamsters Pension Trust Fund*, 722 F. Supp. 725, 728 (N.D. Ga.
3  1989). There is no logical connection between this district and this case. A ruling
4  that this district is the proper venue would be contrary to the policy of protecting
5  defendants from unfairness and inconvenience with regard to the forum where the
6  case may be tried.

7  　　　　"ERISA includes a special venue provision applicable to
8  　　　　this matter [Section 4301(d)], which provides that '[a]n
9  　　　　action . . . may be brought in the district where the plan is
10  　　　　administered or where a defendant resides or does
11  　　　　business[.]"

12  *Flynn v. Berich*, 603 F. Supp. 2d 49, 50 (D.D.C. 2009) (discussing Section 4301(d)
13  (citations omitted).[8]

14  　　　　The NRF is not administered in this district. Rather, it is administered in New
15  York and Rhode Island. (Rust Decl. at ¶ 5.) The Trustees of the NRF generally hold
16  their meetings in New York and New Jersey. (*Id.* at ¶ 6.) They have never met in the
17  Central District of California. (*Id.*) Only one trustee is based in this district. (*Id.*)
18  Thus, venue is proper in this district only if the NRF "does business" in this district.
19  The concept of "doing business" in venue statutes like Section 4301(d) is a "narrower
20  concept than the 'transacting business' requirement" in long-arm statutes (the purpose
21  of which is to "protect plaintiffs") "and likewise requires more than constitutional due
22  process standards for personal jurisdiction . . . ." *Delta Air Lines,* 722 F. Supp. at
23  728. Five factors are to be considered in determining whether an entity is "doing

24
25  [8] Although the Colony Parties allege in the Complaint that venue is proper under both Section 4301(d) and ERISA Section 502(e)(2), 29 U.S.C § 1132(e)(2), only Section
26  4301(d) is applicable. Section 4301(d) is the exclusive provision governing venue in actions brought pursuant to Title IV of ERISA, including the Complaint. *See Flowers*
27  *Indus., Inc. v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 565 F. Supp. 286, 288 (N.D. Ga. 1983). ERISA Section 502(e)(2), on the other hand, is only
28  relevant to actions founded upon breaches of fiduciary duty under Title I of ERISA.

9

743189

1  business" for purposes of Section 4301(d):

2         1) the character and nature of the business, 2) the continuity

3         of the business operations in the district (is it of a systematic

4         nature so as to constitute a pattern of business activity, or is

5         it merely composed of a single transaction or a single visit

6         with the state), 3) the number of contacts with the district

7         (*e.g.*, the court will examine such contacts as meetings,

8         telephone calls, mailings, solicitations, and negotiations ...),

9         4) the physical presence of the defendant in the forum (does

10         the defendant maintain an office or other facility in the

11         district, maintain a bank account, telephone listing, post

12         office box, or own any property or other assets in the

13         district), and 5) the method of doing business (is it by way

14         of direct representative, agent, subsidiary, franchise, or

15         other affiliate, or is the defendant a common carrier).

16  *Id.* (internal citation and quotation omitted).

17      With regard to the first factor (the nature of the business), the *Delta Air Lines*

18  court emphasized that a pension fund (like the NRF) is different than most

19  "businesses" in that "it is not set up as a profit-making endeavor per se, but rather to

20  protect workers and their respective employers by fostering the strength of the

21  pension plans and minimizing costs." 722 F. Supp. at 729. Accordingly, Congress

22  intended the venue provisions of Section 4301 to be construed for the protection of

23  multiemployer pension plans in litigation with employers. *Id.* (citing the legislative

24  history of ERISA and the MPPAA). Thus, the first factor weighs in favor of the

25  NRF.

26      Likewise, the other factors weigh in the NRF's favor. The NRF has no "brick

27  and mortar" presence in this district. It does not have an office, bank account, post

28  office box or telephone listing in the district. (Rust Decl. at ¶ 4.) It is administered in

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

10

743189

New York and Rhode Island, and just one of its 48 trustees is based in this district. (*Id.* at ¶ 6.)  The NRF's activities in this district are limited to collecting pension contributions from employers and paying benefits to participants who live in the district.  (*Id.* at ¶ 10.)  The number of plan participants who reside in the district is *de minimus*.  Of over 435,000 participants in the NRF, fewer than five percent of the NRF's participants are located in this district.  (*Id.* at ¶¶ 8, 9.)  More fundamentally, the limited contacts the NRF has in this district have nothing to do with this case— which arose from the withdrawal from the plan by RIH, the owner and operator of a New Jersey hotel and casino, which employed plan participants in New Jersey and made contributions to the NRF on the basis of the employees' work in New Jersey.

Section 4301(d) "was intended to make collection actions more efficient, economical, and inexpensive for ERISA funds by permitting them to bring such actions in their home districts." *Flynn*, 603 F. Supp. 2d at 50 (quotation marks an citations omitted).  By preemptively bringing this action in this district, the Colony Parties seek not only to stop ERISA's statutorily mandated withdrawal liability collection and dispute process, but also to burden the NRF with a litigation far from its home district.  A California litigation will undoubtedly be less efficient, economical and far more expensive for the NRF than litigation in its home district in New York.  Based on the plain language of Section 4301(d) and Congressional intent, venue is improper in the Central District of California, and this action should be dismissed.[9]

## B.  <u>If Venue Is Proper In This District, The Case Should Be Transferred To The Southern District Of New York.</u>

In the alternative, if venue is proper in this district, it is not the most

---

[9] In the alternative, if the Court believes that venue is improper in this district but that it would serve the "interests of justice" to transfer this case rather than dismiss it pursuant to 28 U.S.C. § 1406(a), the NRF respectfully submits that, for the reasons set forth below, the Southern District of New York is the appropriate venue to which to transfer it.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

11

743189

1 appropriate or convenient place for the action, and, therefore, the action should be
2 transferred to the Southern District of New York.[10]  Under 28 U.S.C. § 1404(a), "[f]or
3 the convenience of parties and witnesses, in the interest of justice, a district court may
4 transfer any civil action to any other district or division where it might have been
5 brought."  "To support a motion for transfer, the moving party must establish that (1)
6 venue is proper in the transferor district; (2) that the transferee district is one where
7 this action might have been brought; and (3) that the transfer will serve [the]
8 convenience of the parties and witnesses and will promote the interest of justice."
9 *Vehimax Int'l v. Jui Li Enter. Co.*, CV 09-6437, 2010 U.S. Dist. LEXIS 42801, at *10
10 (C.D. Cal. Mar. 16, 2010).

11 ### 1.   Venue Is Proper In The Southern District Of New York.

12         Under Section 4301(d), "[a]n action under this section may be brought in the
13 district where the plan is administered or where a defendant resides or does business."
14 Accordingly, venue is proper in the Southern District of New York because that is (1)
15 where the NRF is administered[11] and (2) where, as a result, it does substantial
16 business, including holding Trustees meetings.  (Rust Decl. at ¶ 6.)
17         Some courts have interpreted the term "defendant" in Section 4301(d) to mean
18 "employer," *Holland v. King Knob Coal Co., Inc.*, 87 F. Supp. 2d 433, 439 (W.D. Pa.
19 2000) (emphasis added) ("The statute provides a plan with a broad choice of venues .
20 . . i.e., any district where *an employer* resides or does business or in the district where

21

22 ───────────────
[10] Venue would also be proper in the United States District Court for the District of
23 New Jersey because that is where Resorts is located, where the employees in respect
of whom withdrawal liability is owed worked and where relevant witnesses are
24 located.  The NRF would not oppose transfer to that jurisdiction.
[11] The NRF is administered in both New York and Rhode Island, making venue
25 proper in either location.  *See United Food & Commercial Workers Intern. Union-
Indus. Pension Fund v. Spartan Stores, Inc.*, No. 92 C 3345, 1992 WL 309545, at *2
26 (N.D. Ill. Oct. 20, 1992) ("The unambiguous language of [Section 4301(d)] allows a
plan to proceed in the district where it currently is administered."); *Lads Trucking Co.
27 v. Bd. of Trs. of W. Confer. of Teamsters Trust Fund*, 777 F.2d 1371, 1375 (9th Cir.
1985) (holding that when the plan is administered in more than one district, venue is
28 proper in any such district).

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

12

743189

the plan is administered."), which reflects the fact that lawsuits involving withdrawal liability are generally brought by pension plans, not employers.  Even under that interpretation of the statute, venue is proper in the Southern District of New York, because the Colony Parties reside and/or do business there.  Colony Capital has one of its offices in New York, and Colony Capital executives and personnel (including the General Counsel) are based in that office.  (*See* Cade Decl. at ¶¶ 2, 12, Ex. A.)  Upon information and belief, the Colony Parties' managerial activities with respect to Resorts and its affiliates took place in New York (from Colony Capital's New York office) and New Jersey (where Resorts is located).  In addition, agreements with respect to the 2009 Transaction were, on information and belief, negotiated by parties located in New York.  (Richman Decl. at ¶¶ 3, 4).  Under those documents, the Colony Parties submitted to the law of New York and the state and federal courts therein.  (Welch Decl. at Exs. 3, 5 & 7.)  Based on these facts, venue is proper under Section 4301(d) in the Southern District of New York.

### 2.    The Relevant Case-Specific Factors Weigh In Favor Of Transferring The Action To The Southern District of New York.

Transferring the action to the Southern District of New York will serve the convenience of the parties and witnesses and will promote the interest of justice.  Courts within this district weigh multiple factors in determining whether the moving party has met its burden of proof, including:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to

13

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

743189

1   compel attendance of unwilling non-party witnesses, and (8)

2   the ease of access to sources of proof.

3   *Alcatel Lucent United States, Inc. v. Dugdale Communs., Inc.*, CV 09-2140, 2010

4   U.S. Dist. LEXIS 22226, at *21-22 (C.D. Cal. Mar. 5, 2010) (quoting *Jones v. GNC*

5   *Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)). These factors weigh in

6   favor of transferring this action to a more convenient venue in New York.

7       First, all of the parties to this dispute have substantial contacts in the Southern

8   District of New York. Both the NRF and Colony Capital have offices within the

9   Southern District of New York, and the Colony Parties conducted business relating to

10  RIH and Resorts out of those offices. Moreover, Colony Capital has availed itself of

11  the jurisdiction of the Southern District of New York by initiating a lawsuit in that

12  court. (Cade Decl. at ¶ 9, Ex. H.) Likewise, Colony Capital has availed itself of, and

13  submitted itself to, the jurisdiction of the New Jersey Gaming Authorities. (Welch

14  Decl. at ¶ 21.)

15      Second, relevant agreements were negotiated, executed and/or carried out in

16  New York and New Jersey and/or are governed by New York law, and many

17  potential witnesses are located in New York and New Jersey. While the issue of

18  whether the principal purpose of the 2009 Transaction was to evade or avoid

19  withdrawal liability is to be resolved in arbitration in New York, the issue of whether

20  the Colony Parties are employers under ERISA is a question to be determined by a

21  court. *Doherty*, 16 F.3d at 1390.[12] Testimony and documentary evidence in this case

22  will concern the determination of whether the Colony Parties are "trades or

23  businesses" that can be liable as "employers" within RIH's controlled group for

24  RIH's withdrawal liability to the NRF. Specifically, testimony and documentary

25  evidence will concern the Colony Parties' level of influence and control over RIH and

26

27  _____

    [12] Litigation and arbitration may proceed simultaneously. *Cent. States, Se. & Sw.*

28  *Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992).

14

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

743189

1  Resorts, including their involvement in the day-to-day operations of those entities,

2  including employment, operational and financial matters (such as the 2009

3  Transaction). *Cf. Palladium*, 722 F. Supp. 2d at 870.

4  Upon information and belief the Collective Bargaining Agreement pursuant to

5  which RIH was required to contribute to the NRF was negotiated in New Jersey.

6  (Rust Decl. at ¶ 14.) The Trust Agreement to which RIH (and the members of its

7  controlled group) are bound requires that all disputes thereunder be resolved in

8  arbitration in New York. (*Id.* at ¶ 17, Ex. 1.) Agreements with respect to the 2009

9  Transaction were, on information and belief, negotiated by parties located in New

10  York. (Richman Decl. at ¶¶ 3, 4.) Moreover, the Colony Parties agreed that many of

11  those deal documents are governed by New York law and that they would submit to

12  the jurisdiction of state and federal courts in New York State for purposes of

13  resolving disputes thereunder. (Welch Decl. at Exs. 3, 5 & 7.)

14  Witnesses potentially include the NRF's plan administrator, employees of RIH

15  (who reside and work in New Jersey), Mr. Ribis (who worked as Resorts' CEO in

16  New Jersey), employees and executives of Colony Capital, including Mr. Barrack

17  (Colony Capital's Founder, Chairman, and CEO, who was an executive and director

18  of RIH in New Jersey), Mr. Sanders (Colony Capital's General Counsel, who works

19  in Colony Capital's New York office), and Column employees and others involved in

20  the 2009 Transaction who are based in New York. Some of the substantial number of

21  witnesses who live and work on the east coast are likely not subject to the subpoena

22  power of the Central District of California.

23  Transferring this action to New York will eliminate the need for most witnesses

24  to travel across the country for purposes of testifying, saving both time and money.

25  The NRF's counsel is based in New York as well. Transferring the action to the

26  Southern District of New York will save the NRF expenses. These cost savings are

27  particularly important in light of the NRF's precarious financial condition. Under the

28  Pension Protection Act, Pub. L. No. 109-280, § 202(b)(2) 120 Stat. 780 (2006) (the

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

15

743189

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  "PPA"), a multiemployer plan is in "critical status" if its funded percentage is less

2  than 65 percent and certain other conditions are present, or if specified alternative

3  circumstances exist.  On March 31, 2010 the NRF's actuary certified that the NRF is

4  in critical status for purposes of the PPA.  (Rust Decl. at ¶¶ 11-13.)  By contrast,

5  transferring venue to the east coast will not result in substantial hardship to the

6  Colony Parties.  Indeed, one of Colony Capital's offices is in New York.  Moreover,

7  although the Colony Parties' lead counsel in this action is based in California, he

8  regularly provides legal services in New York (where his law firm has a large office).

9  (Richman Decl. at ¶ 2.)

10         Finally, deference to the Colony Parties' choice of venue is not warranted.

11  "Deference to the plaintiff's choice of venue is . . . diminished 'if the moving party

12  establishes one or more of the following factors: (1) the operative facts have not

13  occurred within the forum; (2) the forum has no particular interest in the parties or

14  subject matter; (3) the forum is not the primary residence of either the plaintiff or

15  defendant; or (4) the subject matter of the litigation is not substantially connected to

16  the forum.'"  *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141,

17  1146 (C.D. Cal. 2009) (citations omitted); *see also Alcatel,* 2010 U.S. Dist. LEXIS

18  22226, at *30 ("[I]n determining the amount of deference to be given to the plaintiff's

19  choice of forum, a court must consider the extent of both the plaintiff's and the

20  defendant's contacts with the forum, including those relating to the plaintiff's cause

21  of action."); *Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, CV 06-

22  1190, 2006 U.S. Dist. LEXIS 37641, at *8-9 (C.D. Cal. June 6, 2006) (granting

23  transfer to the Southern District of New York, noting that "'where the forum lacks a

24  significant connection to the activities alleged in the complaint,' the degree to which

25  courts defer to the plaintiffs chosen venue is 'substantially reduced.'" (citations

26  omitted)).  The only connection between this district and this action is that the Colony

27  Parties have an office in the district.  Deference to the Colony Parties' choice of

28  forum is, therefore, unwarranted.

743189

C.  **The Judges In The Southern District Of New York Have Fewer**
**Filings Than The Judges In This District.**

"Some courts also consider the relative congestion of the transferor court's docket to that of the transferee court." *Fontaine v. Washington Mutual Bank, Inc.*, CV 08-5659, 2009 U.S. Dist. LEXIS 41168, at *16-17 (C.D. Cal. Apr. 30, 2009). According to the 2010 U.S. District Court Judicial Caseload Profile, the Southern District of New York has approximately 20 percent fewer total filings per judge than this Court.  This difference weighs in favor of transfer to the Southern District of New York.

IV.  **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed, or, in the alternative, transferred to the Southern District of New York.


DATED: September 19, 2011          Respectfully submitted,

GLASER, WEIL, FINK, JACOBS,
HOWARD & SHAPIRO, LLP

By:  _____/s/_____
        Patricia L. Glaser
        Jill Basinger

SCHULTE ROTH & ZABEL LLP
Ronald E. Richman (*pro hac vice pending*)
Holly H. Weiss (*pro hac vice pending*)
Jill L. Goldberg (*pro hac vice pending*)

*Attorneys for Defendant The National Retirement Fund*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)**

743189