1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PATRICIA L. GLASER - State Bar No. 55668
    pglaser@glaserweil.com
JILL BASINGER - State Bar No. 195739
    jbasinger@glaserweil.com
GLASER WEIL FINK JACOBS
    HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Ronald E. Richman (*pro hac vice*)
    ronald.richman@srz.com
Holly H. Weiss (*pro hac vice*)
    holly.weiss@srz.com
Jill L. Goldberg (*pro hac vice*)
    jill.goldbergmintzer@srz.com
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022-3902
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

Attorneys for Defendant the National
Retirement Fund

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

COLONY CAPITAL, LLC, a
Delaware limited liability company,
and COLONY INVESTORS IV,
L.P., a Delaware limited partnership

          Plaintiffs,

vs.

THE NATIONAL RETIREMENT
FUND, and DOES 1 through 10,
inclusive,

          Defendants.

CASE NO. CV 11-07235-R (AGRx)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT THE NATIONAL RETIREMENT FUND'S MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) OR 1406(A)**

Date:  October 24, 2011
Time: 10:00 a.m.
Crtrm.: 8

Honorable Manuel L. Real

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT .............................................................................................. 2

    A. Congressional Intent Mandates Transfer to New York. ........................ 2

    B. Venue Is Improper In This District. ...................................................... 3

    C. The Case Should be Transferred to the Southern District of New York. 13

    D. Delay Is Unwarranted. ...................................................................... 18

III. CONCLUSION .......................................................................................... 20

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

REPLY MEMO P&A'S IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE

# **<u>TABLE OF AUTHORITIES</u>**

## **CASES**

**<u>Page</u>**

*Alcatel Lucent U.S.A., Inc. v. Dugdale Commc'ns., Inc.*,

   CV 09-2140, 2010 U.S. Dist. LEXIS 22226 (C.D. Cal. Mar. 5, 2010)...13, 15, 16

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,

   No. SACV 07-846, 2008 WL 7071464 (C.D. Cal. Jan. 17, 2008)........................5

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Wilson*,

   No. C 09-00256, 2009 WL 1357409 (N.D. Cal. May 13, 2009)...........................2

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity*

   *Partners, LLC*,

   722 F. Supp. 2d 854 (E.D. Mich. 2010) ........................................................2, 13

*C&S Wholesale Grocers, Inc. v. New England Teamsters Pension Fund*,

   4 Emp. Ben. Cas. 1097 (D. Vt. 1982)....................................................................8

*Carthage Mills Div. v. Textile Workers Pension Fund*,

   4 Emp. Ben. Cas. 1329 (S.D. Ohio 1983) ............................................................4

*Delta Air Lines, Inc. v. W. Confer. of Teamsters Pension Trust Fund*,

   722 F. Supp. 725 (N.D. Ga. 1989)............................................................2, 3, 12

*Flowers Indus., Inc. v. Bakery & Confectionery Union &Indus. Int'l*

*Pension Fund*,

   565 F. Supp. 286 (N.D. Ga. 1983).............................................................*passim*

*Hernandez v. Graebel Van Lines*,

   761 F. Supp. 983 (E.D.N.Y. 1991)......................................................................15

*Honda Assocs., Inc. v. Nozawa Trading, Inc.*,

   374 F. Supp. 886 (S.D.N.Y. 1974) ........................................................................5

*Jones v. GNC Franchising, Inc.*,

   211 F.3d 495 (9th Cir. 2000) ...............................................................................13

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

*Metz v. U.S. Life Ins. Co. in City of New York*,

   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ..........................................................13, 15

*Mr. Pleat v. ILGWU Nat'l Ret. Fund*,

   4 Emp. Ben. Cas. 1154 (C.D. Cal. 1982) ......................................................*passim*

*Ret. Plan of Unite Here Nat'l Ret. Fund v. Village Resorts, Inc.*,

   No. 08 Civ. 4249, 2009 WL 255860 (S.D.N.Y. Feb. 4, 2009) ............................5

**STATUTES**

29 C.F.R. §§ 4001.2-.3 ..............................................................................................18

29 U.S.C. § 1301(b) ..................................................................................................18

29 U.S.C. §§ 1381-99 ..................................................................................................3

28 U.S.C. § 1391 ......................................................................................................12

29 U.S.C. § 1399(c)(2) ................................................................................................2

29 U.S.C. § 1401(a)(1) ................................................................................................3

29 U.S.C. § 1401(d) ....................................................................................................2

28 U.S.C. § 1404(a) ..........................................................................................1, 13, 15

29 U.S.C. § 1451(b) ....................................................................................................2

29 U.S.C. § 1451(d) ....................................................................................................2

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

REPLY MEMO P&A'S IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Colony Parties[1] have not met their burden to establish that venue is proper in this district. They present a distorted and misleading picture of the facts, by ignoring relevant facts (*e.g.,* that the NRF has no "brick and mortar" presence in the district), reciting irrelevant and misleading statistics (by stressing the NRF's activities in California rather than in this district, and failing to put those statistics in perspective), and ignoring the fact that the NRF's activities in this district have nothing to do with this case. They also mislead about the law, by failing to cite the only on point case in the Central District of California, *Mr. Pleat v. ILGWU Nat'l Ret. Fund*, 4 Emp. Ben. Cas. 1154 (C.D. Cal. 1982)[2] (while criticizing the NRF for not citing two cases in Vermont and Ohio), and misstating the holding of the principal case upon which they rely. The applicable standard for determining whether venue is proper under ERISA "quantitatively requires greater contact with a forum" than the constitutional minimum contacts test for personal jurisdiction. *Id.*

Assuming, *arguendo,* that venue is proper in this district, the action should nonetheless be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). The Colony Parties' assertion that they managed their investment in RIH from their headquarters in California misses the point. This action arose from the NRF's assessment of withdrawal liability in New York or Rhode Island, and the Colony Parties' involvement in the operations of Resorts, in Atlantic City, New Jersey, is *the* central issue.

The Colony Parties preemptively filed this action here and immediately sought injunctive relief, in an attempt to avoid ERISA's congressionally-mandated

---

1 Capitalized terms not defined herein are defined in the NRF's opening memorandum.

2 A copy of Mr. Pleat is attached as Exhibit 8 to the Reply Declaration of Ronald E. Richman, dated October 3, 2011 ("Richman Reply Decl.").

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

withdrawal liability collection and dispute resolution process. The Colony Parties'
claim that they are not employers under ERISA as members of RIH's controlled
group should be resolved in an action in the NRF's choice of forum (the Southern
District of New York), as Congress contemplated when it amended ERISA by
promulgating the MPPAA.

## II.     ARGUMENT

### A.  Congressional Intent Mandates Transfer to New York.

Congress intended ERISA Section 4301(d), 29 U.S.C. § 1451(d) ("Section
4301(d)"), to protect multiemployer pension plans in litigation with employers. *Delta
Air Lines, Inc. v. W. Confer. of Teamsters Pension Trust Fund*, 722 F. Supp. 725, 729
(N.D. Ga. 1989). Under ERISA, if an employer disputes a pension fund's withdrawal
liability assessment, regardless of whether arbitration is pending, the employer must
make payments of the assessed withdrawal liability in accordance with the schedule
set forth by the plan in the notice and demand. 29 U.S.C. §§ 1399(c)(2), 1401(d); *see
also Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Wilson*, No. C 09-
00256, 2009 WL 1357409, *2 (N.D. Cal. May 13, 2009). If an employer fails to
timely make any withdrawal liability installment payments, the plan may bring an
action against the employer to compel payment. 29 U.S.C. § 1451(b). A plan that
commences a lawsuit against an employer to compel payment may bring the action in
either "the district where the plan is administered or where [the employer] . . . does
business." *Delta Air Lines*, 722 F. Supp. at 728 (citing Section 4301(d)). That this is
not a fund-initiated collection action does not change the fact that the same issue will
be litigated as would have been litigated in a collection action: whether the Colony
Parties can be liable as employers in RIH's controlled group.[3] The Colony Parties

---

[3] The Colony Parties' fundamental argument—that they cannot be employers under
ERISA for purposes of withdrawal liability because they are not "trades or
businesses"—is wrong and contrary to on-point legal authority on the subject. *See
Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners,*

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  should not be permitted to do an end-run around ERISA's withdrawal liability

2  collection and dispute resolution procedures, and to defeat congressional intent, by

3  preemptively filing an action outside of the NRF's home district and resisting the

4  NRF's motion to transfer venue to its home district.

5     **B.  <u>Venue Is Improper In This District</u>.**

6        It is fatal to the Colony Parties' argument that the NRF's business activities in

7  this district have nothing to do with this case.  "A corporation is present within the

8  forum district when its activities there have not only been continuous and systematic

9  *but also give rise to the liability sued on . . . ."  Flowers Indus., Inc. v. Bakery &*

10 *Confectionery Union and Indus. Int'l Pension Fund*, 565 F. Supp. 286, 290 (N.D. Ga.

11 1983) (emphasis added).  Thus, venue was not proper in *Delta Air Lines* because the

12 forum-based contributing employers and forum-based plan participants had "nothing

13 to do with" the lawsuit.  722 F. Supp. at 729-30.  In *Delta Air Lines*, the plaintiffs

14 "submitted to the record an abundance of alleged evidence of defendants' business

15 contacts with this district."  *Id*. at 729.  That evidence included the same kind of

16 evidence the Colony Parties submit here:  the fund entered into direct agreements

17 with Georgia employers to provide for contributions to the fund; the fund received

18 contributions on behalf of participants who were working in Georgia; vested deferred

19 participants lived in Georgia; retirees lived in Georgia; and, the fund performed an

20 audit of an employer in Georgia.  *Id.* at 729-30.  None of that, however, convinced the

21 _____

22 *LLC*, 722 F. Supp. 2d 854 (E.D. Mich. 2010); Pension Benefit Guaranty Corporation
   opinion letter dated September 26, 2007; Declaration of Shannon L. Cade, dated

23 September 15, 2011 ("Cade Decl."), Ex. G.  Contrary to the Colony Parties' assertion
   in footnote 6 of their brief (Pl. Br. at 12, n.6), disputes between an employer and the

24 plan sponsor concerning a determination made by the plan sponsor under Sections

25 4201 through 4219 of ERISA, 29 U.S.C. §§ 1381-99, including whether a "principal
   purpose of any transaction is to evade or avoid liability under this part," must be

26 resolved in a timely initiated arbitration.  29 U.S.C. § 1401(a)(1).  That the NRF has

27 not "moved to compel arbitration" sheds no light on the arbitrability or validity of the
   NRF's "evade or avoid" claim.

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  court that the venue requirement of "doing business" under Section 4301(d) was met,

2  because those activities had nothing to do with the lawsuit.  *Id.*  The court observed,

3  "[i]f the types of contacts plaintiffs are referring to is sufficient to trigger the venue

4  statute, the . . . [f]und could be haled into court in practically every district in the

5  country." *Id.* at 730.  By contrast, venue was proper in *Flowers* because the

6  defendant pension fund collected contributions from, among others, the plaintiff

7  employer's subsidiary, and paid benefits to participants for work performed for the

8  plaintiff employer's subsidiary, *in the forum*.  565 F. Supp. at 292; *see also Carthage*

9  *Mills Div. v. Textile Workers Pension Fund*, 4 Emp. Ben. Cas. 1329, 1330 (S.D. Ohio

10  1983) (fund collected contributions from the plaintiff and paid benefits to employees

11  of the plaintiff in the forum "in the course of its relationship with plaintiff").

12  Employers from more than 40 states contribute to the NRF.  (Rust Tr. at 62:3-9.)  If

13  collecting contributions from employers was sufficient to confer proper venue, the

14  NRF could be haled into courts in more than 40 different states.

15       None of the collection and benefit payment (and other ancillary activities) that

16  the Colony Parties identify has anything to do with this lawsuit.  "[T]he single

17  operative event giving rise to this cause of action was the Fund's decision to impose

18  withdrawal liability on the plaintiff[s], a decision assessed and administered" in the

19  states where the NRF is administered (New York and Rhode Island).  *Flowers*, 565 F.

20  Supp. at 289; (Declaration of Richard N. Rust, dated September 19, 2011 ("Rust

21  Decl."), ¶ 5.)  That withdrawal liability arose from New Jersey-based RIH's

22  withdrawal from the NRF.  (Reply Declaration of Richard N. Rust, dated October 3,

23  2011 ("Rust Reply Decl."), ¶ 2.)  RIH made contributions to the NRF on behalf of

24  employees who worked at Resorts in Atlantic City, New Jersey.  (Rust Decl. ¶ 14.)

25  That the Colony Parties claim they managed their investment in Resorts from

26  California is of no moment.  (Pl. Br. at 17:15-16.)  Their actions are not relevant to

27  determining whether the NRF does business in this district.  The only NRF activity in

28  this district that is related to this case is that the NRF sent letters (from Rhode Island)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  to the Colony Parties in this district assessing withdrawal liability.  (Rust Reply Decl.

2  Ex. 1.)  That is not enough.  *Honda Assocs., Inc. v. Nozawa Trading, Inc.*, 374 F.

3  Supp. 886, 890 (S.D.N.Y. 1974); *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No.

4  SACV 07-846, 2008 WL 7071464, at *4 (C.D. Cal. Jan. 17, 2008.) (letters sent to

5  potential patent infringers insufficient to establish personal jurisdiction).[4]

6      Assuming, *arguendo,* that the NRF can be held to be "doing business" under

7  Section 4301(d) based on business activities in the forum unrelated to this lawsuit, the

8  Colony Parties have not met their burden to show that venue is proper.[5]  In *Mr.*

9  *Pleat*—the only on point case from this district (which the Colony Parties fail to

10  cite)—an employer in this district sought a declaratory judgment that it was not liable

11  to a multiemployer plan that was administered in the Southern District of New York,

12  just like this case.  4 Emp. Ben. Cas. at 1154.  The court found venue in this district to

13  be improper.  *Id.* at 1155.  The court held, "the applicable standard for determining

---

14

15  [4] That the NRF once commenced withdrawal liability litigation against an unrelated
16  contributing employer in the Northern District of California does not link the NRF's
    activities to this case.  (*See* Rust Reply Decl. Ex. 5.)

17  [5] The Colony Parties' argument, in a footnote, that the NRF is administered in
    California is wrong.  (Pl. Br. at 5, n. 4.)  A plan is administered where it is managed
18  or directed.  *Ret. Plan of Unite Here Nat'l Ret. Fund v. Village Resorts, Inc.*, No. 08
    Civ. 4249, 2009 WL 255860, at *3-4 (S.D.N.Y. Feb. 4, 2009) (holding that the NRF
19  is administered in the Southern District of New York, because its administrative
    office is there, its counsel is there, and its trustees regularly meet there).  That a local
20  union located in the district has the authority to appoint trustees to the NRF does not
    mean the NRF is administered in California, and when that local union stated on a
21  government form that it "participated in the administration" of the NRF (and several
    other funds), the union could only have been referring to its participation via its
22  trustee appointment power.  That, for a short period of time subsequent to the mergers
    of two funds into the NRF in 2007, those funds continued to be administered by their
23  third party administrators at the location of the third party administrator in this district
    likewise does not mean that the NRF is administered in this district.  (*See* Rust Reply
24  Decl. Ex. 3 at Response to Request Nos. 4-5; Rust Tr. at 127:13-25, 129:10-24,
    130:22-131:13.)  Citations to "Rust Tr." herein refer to the September 23,
25  2011 deposition Richard N. Rust, attached as Exhibit 7 to the Rust Reply Declaration.

26

27

28

whether the Fund is doing business in this District is whether its activity is of such a nature as to 'localize the business and make it an operation within the district.'" *Id.* (citation omitted). The court distinguished the "federal venue standard of 'doing business'" "from the constitutional test for personal jurisdiction," and found that the venue standard "quantitatively requires greater contact with a forum." *Id.* (citation omitted).

In *Mr. Pleat*, the defendant fund was found not to be "doing business" in this district because (i) fewer than one percent of the employer contributions to the fund came from employers located in the Central District of California and fewer than one percent of the benefit checks mailed to beneficiaries were mailed to participants in the district, and (ii) the fund had no offices, employees, agents, bank accounts, or property in the district. *Id.* Like the fund in *Mr. Pleat*, (i) less than five percent of the employer contributions to the NRF come from employers in this district, and less than five percent of the NRF's participants reside here, and (ii) the NRF has no offices, employees or bank accounts in the Central District of California. (*See* Rust Decl. ¶¶ 4, 9; Rust Reply Decl. Ex. 2; Rust Tr. at 26:8-19, 69:5-17.) This Court should follow *Mr. Pleat*, and find that venue is not proper here.

The Colony Parties exaggerate the NRF's business activities in this district in an obvious effort to mislead the Court, in the first instance by repeatedly citing to the NRF's business activities in California, rather than in this district. (*See, e.g.,* Pl. Br. at 1:15-18, 9:26-28.) Section 4301(d) provides that venue is proper "*in the district where the plan is administered or where a defendant . . . does business.*" (emphasis added.) Contributing employer, participant and other numbers and activities in California as a whole, rather than in this district, are irrelevant to the determination of proper venue. *See Mr. Pleat*, 4 Emp. Ben. Cas. at 1155 (examining the amount of

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  business carried on by the defendant *in the district*).[6]

2      The Colony Parties also mislead the Court by failing to put the numbers and

3  activities they cite in perspective. The NRF collects pension contributions from

4  employers, and distributes benefits to plan participants. (Rust Tr. at 23:9-20, 123:10-

5  13.) The fund performs these activities from the offices in which it is administered

6  (in New York and Rhode Island). (Rust Decl. ¶ 5; Rust Tr. at 13:17-21, 21:4-6,

7  21:24-22:3, 23:21-24:5, 123:10-18.) These activities are overseen by the Board of

8  Trustees (there are 48 trustees, (including 4 current vacancies), most of whom are

9  based on the east coast). (Rust Decl. ¶¶ 6, 17, Ex. 1 (Article VI, Section 1 ("The

10  Trustees shall supervise generally the administration of the Fund."); Rust Reply Decl.

11  Ex. 2 at Response to Request No. 2.) There is only one trustee who is based in this

12  district. (Rust Decl. ¶ 6.) That trustee acts at meetings of the Trustees, which are

13  generally in New York or New Jersey, and have never been in California. (Rust Decl.

14  ¶ 6; Rust Reply Decl. Ex. 2 at Response to Request No. 3; Rust Tr. at 94:15-18.) That

15  the trustee is based in the district or was appointed by a local union located in the

16  district is beside the point.

17      There are only approximately 46 employers in this district. (Rust Reply Decl.

18  Ex. 2 at Response to Request No. 7.) The Colony Parties omit that there are more

19  than 1000 contributing employers to the NRF nationwide. *Id.* The Colony Parties

20  also fail to point out that the amount of contributions that are made to the NRF by

21  employers in this district is relatively small, based on the small number of employers

22  that are located in the district, and their relatively low contribution rates. (Rust Reply

23  Decl. Ex. 2 at Response to Request No. 18, Ex. 4, Ex. 5, Ex. 6.)[7] Atlantic City, New

24  

25  ─────────────

25  [6] Regardless, when state-wide numbers are used (and put into perspective when
    compared with aggregate numbers), the difference is immaterial. (*See* Rust Reply
26  Decl. ¶ 6, Exs. 2, 3, 4.)

27  [7] The NRF was unable to provide the Colony Parties with precise dollar amounts of
    contributions, state-by-state, as they demanded, because to do so would take many

28  

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Jersey casino contributing employers (of which there are only ten) contribute approximately 25 percent of the total contributions made to the NRF, due to their relatively high contribution rates (as compared to laundry employers located in this district). (Rust Tr. at 70:5-20.) Hotel employers in Chicago, Illinois contribute at similarly relatively high rates. (*Id.* at 70:19-71:12.) The collection of a relatively small amount of contributions from the small number of employers in this district cannot support the conclusion that the NRF is "doing business" in this district. *See Mr. Pleat*, 4 Emp. Ben. Cas. at 1155; *cf. C&S Wholesale Grocers, Inc. v. New England Teamsters Pension Fund*, 4 Emp. Ben. Cas. 1097, 1098 (D. Vt. 1982) (concluding venue was proper in Vermont because the fund collected contributions and paid benefits in Vermont (without describing the extent of those contributions and benefits) and "directly" took steps to collect withdrawal liability from the plaintiff in Vermont).[8]

The Colony Parties' statements about California-based participants are similarly distorted. (Pl. Br. at 9:22-10:3.) Less than five percent of the NRF's participants reside in this district. (Rust Decl. ¶ 9.) There are only approximately 15,500 participants in this district—8,000 actives, 6,000 retirees and 1,500 deferred vested participants—out of 435,000 total plan participants—98,000 actives, 170,000 retirees and 167,000 deferred vested participants. (Rust Reply Decl. ¶ 8, Ex. 2 at Response to Request No. 8, Ex. 6 at Response to Request No. 8; Rust Tr. at 64:7-17, 65:5-66:8, 69:5-17, 76:16-19, 158:8-14.) Benefits are tied to contributions. (*See, e.g.,* Rust Tr. at 103:19-25; 106:9-107:21.) Therefore, the benefits paid to participants employed in this district are significantly lower than those paid to participants

weeks and would be extremely costly. (Rust Reply Decl. Exs. 4, 5; Rust Tr. at 69:18-70:4, 74:7-14, 155:19-156:5.)

[8] *C&S* does not say that the first two factors in *Flowers* are of "paramount importance," as the Colony Parties assert. (Pl. Br. at 13:19-22.) Rather, it says the fund's collection and benefit payment activities are "two of its most important business activities." *C&S*, 4 Emp. Ben. Cas. at 1098.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

employed in other districts, such as Atlantic City, New Jersey and Chicago, Illinois. (Rust Reply Decl. Ex. 2 at Response to Request No. 19, Ex. 4, Ex. 5, Ex. 6; Rust Tr. at 70:8-71:12.)[9] The small number of participants negates a finding that venue is proper here. *See Mr. Pleat*, 4 Emp. Ben. Cas. at 1155.

The NRF's sporadic activities ancillary to collecting contributions with respect to the few contributing employers that are located in the district—such as payroll audits, entering into supplemental agreements, sporadic visits by NRF agents,[10] telephone calls to California,[11] withdrawal liability assessments or collection efforts— do not constitute "doing business," because those activities are "isolated," relatively limited (given the small number of employers in this district), and do not "represent the routine business of the" NRF. *Flowers*, 565 F. Supp. at 293. The Colony Parties' description of the holding in *Flowers*—that "venue was proper when the fund's only contact with Georgia were a fund director's having attended a single meeting there, and an accountant auditing three employers in the State" (Pl. Br. at 19:21-23)—is wrong. The court based its decision on "continuous and systematic" contacts between the fund and *the plaintiff's subsidiaries* in Georgia, "representing a steady pattern of business activity," including receiving millions of dollars in contributions from Georgia-based employers (including the plaintiff's Georgia-based subsidiary) and benefits to Georgia beneficiaries. *Flowers*, 565 F. Supp. at 292. Neither the single visit by the fund director, nor the "appearance of an accountant to do a payroll audit,"

---

[9] Other than paying benefits, the NRF's only activity with respect to participants is education. That an education coordinator "occasionally" traveled to California to educate participants (fewer than ten times) (Rust Tr. at 35:18-36:3, 36:11-37:7) is not sufficient to support a finding that venue is proper here. *See Flowers*, 565 F. Supp. at 293.

[10] In connection with two mergers of funds into the NRF, one in 2007 and one in 2002, the NRF's counsel and a representative of the NRF's administrator traveled to California. (Rust Tr. at 138:25-139:5.)

[11] The Fund's Manager makes calls to California. (*See, e.g.,* Rust Tr. at 34:10-35:12, 100:6-22.)

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

1  were sufficient to constitute "doing business." *Id.* at 293.

2      The Colony Parties also attempt to mislead the Court about the NRF's ancillary

3  activities, by failing to put them in perspective. For example, the Colony Parties note

4  that there are pending withdrawal liability assessments against "at least" five

5  California-based employers in amounts that "exceed" $1.6 million. (Pl. Br. at 11:16-

6  19.) The number is five, not "at least" five, and the amount is $1,646,271. (Rust

7  Reply Decl. Ex. 5.) More fundamentally, the Colony Parties fail to mention that this

8  amount is less than 1.5 percent of the aggregate amount of all the NRF's outstanding

9  withdrawal liability assessments. [12] (*Id.*) They also omit that the NRF has not initiated

10  any lawsuits in this district against any employers for the purposes of collecting

11  withdrawal liability payments. (*Id.* at Ex. 2 at Response to Request No. 9.) Instead,

12  they focus on the single collection action filed by the NRF in the Northern District of

13  California in 2006, and another collection action in the Central District of California

14  that was not commenced by the NRF.[13] (*See id.* at Ex. 5 at 2, Ex. 2 at Response to

15  Request No. 9.)

16      The Colony Parties cite no case law to support the argument that the NRF's

17  investment activities are relevant to the determination of proper venue. (Pl. Br. at

18  19:11-14.) Even if they were relevant, however, they would not support a finding that

19  _____

20  [12] The Colony Parties complain that the NRF "refused . . . to disclose all withdrawal liability assessments in California in the past decade and only disclosed those

21  'currently pending.'" (Pl. Br. at 11.) Contrary to the Colony Parties' assertion, however, the NRF did not refuse to provide this information; rather, the NRF

22  explained that locating information regarding assessments not currently pending and information regarding the exact dollar amounts of its five currently pending

23  assessments in California would require substantial time and expense. (Rust Reply

24  Decl. ¶ 11, Ex. 4.) The NRF informed the Colony Parties that it did not believe there were a substantial number of assessments against California employers not currently

25  pending, and the basis for that belief. (*Id.*)

26  [13] That action was filed by the Santa Monica UNITE HERE Retirement Fund, and

27  was pending as of the time that fund was merged into the NRF in 2007. (Rust Reply

28  Decl. Ex. 2 at Response to Request No. 9.)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   venue is proper in this district.  A sub-committee of the Board of Trustees (the

2   Investment Committee) reviews and makes recommendations with respect to the

3   NRF's investments.  (Rust Tr. at 82:3-8.)  None of the Trustees on the Investment

4   Committee is from California.  (Rust Reply Decl. Ex. 5 at 4; Rust Tr. at 85:25-86:3.)

5   Moreover, the investments the Colony Parties reference are not California

6   investments.  (*See* Pl. Br. at 10:22-24, 19:11-14.)  The NRF has invested in Delaware

7   investment vehicles managed by Yucaipa, which maintains an office in California.

8   (Rust Reply Decl. ¶ 10.)  The NRF's investment in the PIMCO Funds is in a

9   Massachusetts-based trust affiliated with PIMCO, which has an office in California.

10  (Rust Reply Decl. ¶ 10, Ex. 6.)[14]

11       In its effort to paint a distorted picture of the NRF's business activities in

12  California, the Colony Parties ignore that the NRF does not have an office, bank

13  account, post office box or telephone listing in the district—facts critical to the court's

14  decision in *Mr. Pleat*.  4 Emp. Ben. Cas. at 1155; (Rust Decl. ¶ 4; *see also* Rust Reply

15  Decl. Ex. 2 at Response to Request Nos. 13-15, Ex. 3.)  Instead, they attempt to

16  attribute physical presence to the NRF through its retention of two law firms in the

17  district, by the fact that two funds that merged into the NRF in 2007 continued to be

18  administered by their third party administrators for a short time after the mergers (but

19  not currently) (Rust Tr. at 127:13-25, 129:10-24, 131:22-131:13),[15] and because a

20  local union appointed one trustee who is based in this district.[16]  (Pl. Br. at 19:27-

---

22  [14] Nor is the fact that the NRF was a plaintiff in a securities class action case in this

23  district relevant to the venue determination.  That activity is not a "routine" business
    activity; it is an "isolated" event.  *Flowers*, 565 F. Supp. at 293.

24  [15] That two funds previously administered in this district merged into the NRF does

25  not establish that the NRF is doing business in this district.  The merger activity was
    not "routine."  *Flowers*, 565 F. Supp. at 293.

26  [16] The Colony Parties assert that local unions are "affiliated" with the NRF.  (Pl. Br. at

27  14:15-17, 20:6-7.)  They are not.  The NRF receives contributions from employers
    who bargain with unions whose members participate in the fund.  (Rust Tr. at 52:22-

28  25, 53:16-19.)  The Colony Parties also assert that the NRF gave the UNITE HERE

20:8.)  "The activities of the local union cannot be attributed to the Fund to establish venue."  *Mr. Pleat*, 4 Emp. Ben. Cas. at 1155.  The Colony Parties cite no authority to support the argument that any of these facts establish the NRF's physical presence in this district.

In short, the Colony Parties have not met, and cannot meet, their burden to establish that venue is proper in the district, because they have not established, and cannot establish, the NRF does business here.  The NRF's activities are not "of such a nature as to localize the business and make it an operation within the district."  *Mr. Pleat*, 4 Emp. Ben. Cas. at 1155 (citation omitted) (internal quotation marks omitted).[17]

---

Local 11 Union and the Workers United Western Regional Joint Board, both of which are located in Los Angeles, California, authority to appoint three of the NRF's union Trustees.  (Pl. Br. at 10 (citing Petro. Venue Decl. Ex. A at 5-6 & Ex. A).)  They are incorrect.  (Rust Decl. ¶ 17, Ex. 1 at Section 9 and Ex. A.)

[17] The Colony Parties' assertion, in a footnote, that venue is also proper under 28 U.S.C. § 1391 is wrong.  (Pl. Br. at 21, n.10.)  Section 4301(d) "is the exclusive provision governing venue in actions brought pursuant to Title 4 of ERISA."  *Flowers*, 565 F. Supp. at 288.  It is the venue provision that governs disputes, like this one, in which an employer challenges the constitutionality or applicability of the withdrawal liability provisions in ERISA.  *Mr. Pleat*, 4 Emp. Ben. Cas. at 1154 (holding that venue of an employer's action challenging the constitutionality of the withdrawal liability provisions in ERISA is governed by the "special venue provision of MPPAA," Section 4301(d).)  Contrary to the Colony Parties' assertion, in *Flowers* the court "supplemented" (but did not supplant) Section 4301(d) with the general federal venue statute, because the case "involve[d] a constitutional challenge to the provisions of ERISA and [was] brought pursuant to the Declaratory Judgment Act."  565 F. Supp. at 288.  In this case, by contrast, the Colony Parties merely seek a declaratory judgment that they owe no withdrawal liability to the NRF under ERISA.  (Cmplt. at ¶ 1.)  Even if 28 U.S.C. § 1391 applied, "venue requirements of all causes of action must be satisfied."  *Delta Air Lines*, 722 F. Supp. at 727.  In any event, venue is not proper under 28 U.S.C. § 1391, for the same reason it is not proper under Section 4301(d):  the NRF is not "doing business" in this district.  *Id.*  Nor does Section 502(e)(2) of ERISA apply, because Section 4301(d) is the exclusive provision for these cases, and, in any event, the Colony Parties' claim is not a claim under Title I of ERISA.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

**C. The Case Should be Transferred to the Southern District of New York.**

The Colony Parties do not dispute that venue is proper in the Southern District of New York. Thus, this Court has discretion to transfer this action to the Southern District of New York "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Contrary to the Colony Parties' arguments, there are no "contacts relating to the plaintiff[s'] cause of action in the chosen forum." *Alcatel Lucent U.S.A., Inc. v. Dugdale Commc'ns., Inc.*, CV 09-2140, 2010 U.S. Dist. LEXIS 22226, at *21 (C.D. Cal. Mar. 5, 2010) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)). The "operative facts" did not occur in this district, and the "subject matter" of the case is not "substantially connected" to this forum. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009). Therefore, deference to the Colony Parties' choice of forum is not warranted. *Id.*

The situs of the events relevant to the "trade or business" determination is in New York and New Jersey. The withdrawal liability in this case arose in New York and Rhode Island (where the NRF is administered) in connection with the unfunded vested pension benefits of New Jersey-based employees of RIH, which owned and operated Resorts in New Jersey. (Rust Decl. ¶ 5; Rust Reply Decl. ¶ 2.) *See Flowers*, 565 F. Supp. at 289. The Colony Parties' involvement in the operations of RIH and Resorts—the core question in this case, *see Palladium*, 722 F. Supp. 2d at 869-70— effected RIH's business operations in New Jersey.

While the Colony Parties claim to have managed RIH's operations from California (Pl. Br. at 17:15-16), their "contacts with the forum" (the Southern District of New York) in connection with their investment in RIH were extensive. *Alcatel*, 2010 U.S. Dist. LEXIS 22226, at *21. Principals and employees who the Colony Parties claim will be inconvenienced by litigating this case in New York *elected* to become officers and/or directors of RIH and involved in RIH's operation of Resorts' Atlantic City, New Jersey business and listed Resorts' business address, 1133

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   Boardwalk, Atlantic City, New Jersey 08401, as their respective addresses in RIH

2   governing documents. (Richman Reply Decl., ¶ 3, Ex. 3.) Thomas Barrack, Founder,

3   Chairman, and Chief Executive Officer of Colony Capital, was also an executive

4   officer and director of RIH, the entity that the Colony Parties admit "owned and

5   operated Resorts" (Cmplt. ¶ 21), Colony RIH and RIHC. (Cade Decl. ¶ 5, Ex. D.) In

6   addition, Mark Hedstrom, a principal and the Chief Financial Officer of Colony

7   Capital, was a director of RIH, Colony RIH and RIHC. (*Id.* at Ex. D.) Upon

8   information and belief, other employees, partners, members, principals or agents of

9   Colony Capital were executive officers of RIH.[18] (*Id.*) In addition, the Colony

10  Parties applied for and received a gaming license for purposes of operating the casino

11  at Resorts (and, subsequently, other casinos) and touted plans to expand and improve

12  Resorts' property in New Jersey, including plans to build a new 500 room hotel

13  tower. (*Id.* at ¶¶ 6, 7, Exs. E, F.) Colony IV employed New York counsel to

14  represent it in connection with the 2009 Transactions (Welch Venue Decl. ¶ 25) and

15  negotiated that transaction with other New York-based parties and their New York-

16  based counsel, including Column Financial and its counsel at Skadden, Arps, Slate,

17  Meagher & Flom LLP's New York office. (*See* Declaration of Ronald E. Richman,

18  dated September 19, 2011 ("Richman Decl."), ¶ 4.)[19]

19      "[T]he availability of compulsory process to compel attendance of unwilling

20  non-party witnesses" and "the ease of access to sources of proof" are also key factors

21  in determining the most convenient forum. *Alcatel*, 2010 U.S. Dist. LEXIS 22226, at

22  _____

23  [18] The Colony Parties assert that RIH had a "separate COO and CFO" who were not
    employed by Colony Capital (Pl. Br. at 4:25-27), but notably omit reference to RIH's

24  other executives, including its Chief Executive Officer ("CEO"). Based on the
    Colony Parties' silence, the NRF assumes that RIH's CEO was affiliated with Colony

25  Capital as well.

26  [19] Likewise, the Colony Parties' contacts with the forum unrelated to this case are
    extensive. Colony Capital has an office in New York, New York, regularly engages

27  in business in New York, and has brought at least one lawsuit in the Southern District

28  of New York. (Cade Decl. ¶ 9, Ex. H.)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  \*21-22 (citation omitted).  Contrary to the Colony Parties' assertions, many of the key

2  witnesses in this case (many of whom are non-parties) are located in New York and

3  New Jersey and appear to be far beyond the 100 mile subpoena power of this Court,

4  making it likely that the Court will not be able to compel the attendance at trial of at

5  least some, if not many, of these witnesses.  That maintaining this litigation in this

6  district could deprive the NRF of the ability to present testimony of key witnesses at

7  trial militates in favor of transfer pursuant to Section 1404(a).  *Metz*, 674 F. Supp. 2d

8  at 1147 ("The convenience of non-party witnesses is a more important factor than the

9  convenience of party witnesses.") (citations omitted); *Hernandez v. Graebel Van*

10  *Lines*, 761 F. Supp. 983, 986 (E.D.N.Y. 1991) (transferring venue for the

11  "convenience of non-party witnesses" and in the interest of justice).

12       To ascertain the Colony Parties' work with respect to and control over Resorts'

13  operations, the NRF intends to seek testimony from witnesses predominately located

14  in New York and New Jersey:  Nicholas Ribis (who, before the 2009 Transactions,

15  was a director of RIH, RIHC and Colony RIH and held a minority interest in RIH

16  and, after the 2009 Transactions, became the sole owner of Colony RIH and the Chief

17  Executive Officer of RIH) who resides in New Jersey and had an office in Colony

18  Capital's New York office (*see, e.g.,* Cmplt. ¶¶ 5, 27; Cade Decl. ¶¶ 12-13); RIH

19  executives and employees, including RIH's Chief Executive Officer, Chief Operating

20  Officer, Chief Financial Officer and other executives responsible for Resorts'

21  operations, including financial operations and human resources; and officials of the

22  local union (located in Atlantic City, New Jersey) of which RIH employees were

23  members.  In addition, the NRF intends to seek testimony from Messrs. Barrack and

24  Hedstrom (both of whom elected to become officers and/or directors of RIH and

25  therefore chose to become directly involved in Resorts' operations in New Jersey)

26  (*see* Cade Decl. Ex. D); Ronald Sanders, Colony Capital's General Counsel, who is

27  based in New York (and shared his New York office with Mr. Ribis) (*see id.* at ¶¶ 12-

28  13); Richard Welch, a Colony Principal who has submitted multiple declarations in

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    this case but did not hold any officer or director positions at RIH; and other

2    employees, members, partners, principals or agents of Colony Capital or its affiliates

3    that were involved, directly or indirectly, in RIH's operations of Resorts. The NRF

4    cannot now identify by name every witness it intends to call, as the Colony Parties

5    demand, because the NRF does not yet have any of the discovery relevant to

6    determining the relevant witnesses' identities.[20] The Colony Parties filed their

7    complaint just one month ago and did not produce any documents responsive to the

8    September 16, 2011 document requests the NRF served in the context of expedited

9    discovery relating to the Colony Parties' preliminary injunction motion until October

10   1, 2011. (*See* Richman Reply Decl. ¶¶ 13-14.) The Colony Parties' October 1, 2011

11   production consisted of (i) documents the Colony Parties already had given to the

12   NRF prior to initiating this litigation, and (ii) just 51 pages of newly produced

13   documents (which are certificates of incorporation for various entities that owned

14   and/or operated Resorts, including Colony RIH (in which Plaintiff Colony IV owned

15   95 percent of the Class B stock)). (*Id.*)

16         The "differences in the costs of litigation in the two forums" is palpable for the

17   NRF, and, thus, weighs in favor of transfer to the Southern District of New York.

18   *Alcatel*, 2010 U.S. Dist. LEXIS 22226, at *21 (citation omitted). By referring only to

19   the NRF's assets in their brief, the Colony Parties, again, present a misleading picture.

20   (Pl. Br. at 24:15-16.) The NRF a not-for-profit multiemployer pension plan that

21   exists solely to provide pension benefits to participants and their beneficiaries. (Rust

22   Decl. ¶ 3; Rust Reply Decl. ¶ 3.) The NRF's participants may become entitled to

23   pension benefits from the NRF averaging less than $120 per month. (Rust Reply

24   _____

25   [20] The Colony Parties acknowledge that the only documents they have provided to the
     NRF (which they did outside of the context of this litigation) "concern[] the 2009

26   Transaction" (Pl. Br. at 8:4-5), not the issue of whether the Colony Parties are "trades

27   or businesses" that can be held liable for RIH's withdrawal liability as part of its
     controlled group.

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Decl. ¶ 3.)  While the NRF has substantial assets, its liabilities significantly exceed those assets.  (*See* Rust Tr. at 79:3-19.)  Indeed, the NRF is in "critical status," under the Pension Protection Act, which means that it is less than 65 percent funded. (Pension Protection Act, Pub. L. No. 109-280, § 202(b)2) 120 Stat. 780 (2006); Rust Decl. ¶¶ 11-12; Rust Tr. at 80:12-14.)  Compelling the NRF to defend this action outside of its home district will impose significant costs on the NRF, which costs will serve to further the damage the NRF's finances, which have already suffered significant declines in recent years due to the declining financial markets.  (Rust Reply Decl. ¶ 4.)  By contrast, Colony Capital is a for-profit business, that has over $30 billion in assets under management.  (Cade Decl. ¶ 3, Ex. B.)

The Colony Parties urge that the NRF has effectively waived its ability to challenge venue in this district because it served as lead plaintiff in a securities class action case in this district.  (Pl. Br. at 3:15-18, 11:25-28.)  To best protect the interests of the participants in the plan, the NRF joined a litigation that was underway in the Central District of California as a plaintiff under a contingency fee arrangement with its counsel that required no costs to the NRF or its participants or beneficiaries. (Richman Reply Decl. ¶ 2, Exs. 1, 2.)  That the NRF elected to join the litigation pending in the Central District of California, choosing to bear inconvenience for the benefit of its participants, says nothing about whether it would be convenient for the NRF to be forced to defend an action there.  Similarly, that the NRF commenced a single collection action in the Northern District of California five years ago has no bearing on the convenience of being forced to defend this action in this district now. (*See* Rust Reply Decl. Ex. 5.)

It bears noting that this action may be consolidated with related actions in the Southern District of New York, providing for efficiencies.  When it assessed withdrawal liability against the Colony Parties, the NRF also assessed withdrawal liability against Mr. Ribis, RIH and Colony RIH.  (Rust Reply Decl. ¶ 2.)  Under ERISA, all of the members of RIH's controlled group are jointly and severally liable

17

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

for the withdrawal liability. 29 U.S.C. § 1301(b); 29 C.F.R. §§ 4001.2-.3. If this case is transferred to the Southern District of New York, it could, in the interest of justice, be consolidated with cases against other employers in RIH's controlled group. Consolidating those actions in this district would not be possible, given where the other members of the controlled group do business.

Finally, if this Court were to permit this action to continue in this district, it would sanction the Colony Parties' effort to avoid ERISA's withdrawal liability collection and dispute resolution process, and achieve a result that Congress did not intend when it promulgated the MPPAA—a litigation in the forum not of the plan's choice. For all of the foregoing reasons, deference to the Colony Parties' choice of forum is unwarranted, and the action should be transferred to the Southern District of New York.[21]

**D. Delay Is Unwarranted.**

As evidenced by the Colony Parties' brief, the NRF has provided extensive discovery to the Colony Parties with respect to the venue motion. The Colony Parties propounded 21 interrogatories on September 16, 2011. (Richman Reply Decl. ¶ 5, Ex. 4.) The NRF responded to the initial interrogatories within two business days, on September 20, 2011. (*Id.* ¶ 6; *see* Rust Reply Decl. Ex. 2.) After conferring with the Colony Parties' counsel on September 21, 2011, the NRF provided additional information the same day, even though the NRF believed it to be irrelevant. (Richman Reply Decl. ¶ 7; Rust Reply Decl. Ex. 3.) For example, the Colony Parties

---

[21] The Colony Parties assert repeatedly that transfer to the Southern District of New York's White Plains courthouse is inappropriate because the NRF moved its office there "recently"—implying that it moved there from some distant forum. (Pl. Br. at 3:18, 21:13.) The NRF's (or its predecessor's) New York office has been located in the Southern District of New York since at least 1950 (Rust Reply Decl. ¶ 4), which includes New York County (the Borough of Manhattan, in which the NRF's office was located before October 2008, and White Plains). The NRF's New York office has been in White Plains for approximately three years (not two years as the Colony Parties assert). (*Id.*; Pl. Br. at 21:13.)

insisted that the NRF provide participant and contributing employer statistics for California, even though it had already provided those statistics for the Central District of California. (Richman Reply Decl. ¶ 7.) On September 22, 2011, the Colony Parties sent additional requests, including a new interrogatory and a demand that the NRF produce all withdrawal liability demands made in California since 2000. (Richman Reply Decl. ¶ 8, Ex. 5.) The NRF responded to them the same day. (*See* Richman Reply Decl. ¶ 9; Rust Reply Decl. Ex. 6.) On September 23, 2011, the NRF produced its Manager, Richard Rust, who is the most knowledgeable person about the NRF's business activities (Rust Reply Decl. ¶ 1, Ex. 2 at Response to Request No. 20) for approximately three hours of deposition questioning. (Rust Reply Decl. ¶ 14, Ex. 7.) After the deposition, the Colony Parties submitted two follow-up requests, on September 23 and September 25. (Richman Reply Decl. Exs. 6, 7.) The NRF responded on September 24 and September 25, respectively.[22] (Rust Reply Decl. Exs. 4, 5.) The Colony Parties do not describe any additional specific discovery they need that could be obtained within the 30 day period they propose. (*See* notes 6, 11 *supra*.)

While the Colony Parties were engaging in this nearly daily discovery effort, it became apparent to the NRF that rather than having a genuine need for the information they were demanding, the Colony Parties were requesting information to support the request for delay that they have now made. (*See* Richman Reply Decl. Exs. 4, 5, 6, 7.) The NRF was (and is) unwilling to delay resolution of this motion, because (i) there is no basis to do so, given that discovery was completed within a week, and (ii) the parties have entered into a stipulation that adjourns the hearing on Colony Parties' preliminary injunction motion for approximately four weeks, prevents the NRF from filing a collection action, and stays the Colony Parties' deadline to commence arbitration, until after the disposition of the Colony Parties' preliminary injunction motion. Delaying resolution of this motion would prejudice the NRF,

---

[22] The Colony Parties omit the September 25, 2011 response from their papers.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  benefit the Colony Parties, and is not justified.  The Colony Parties' request for delay

2  should be denied.

3  **III.   CONCLUSION**

4       For the foregoing reasons, the Complaint should be dismissed, or, in the

5  alternative, transferred to the Southern District of New York.

6

7

8  DATED: October 3, 2011                 Respectfully submitted,

9                                         GLASER, WEIL, FINK, JACOBS,

10                                        HOWARD & SHAPIRO, LLP

11                                        By:  _____/s/_____

12                                             Patricia L. Glaser
                                              Jill Basinger

13                                        SCHULTE ROTH & ZABEL LLP

14                                        Ronald E. Richman (*pro hac vice*)

15                                        Holly H. Weiss (*pro hac vice*)
                                         Jill L. Goldberg (*pro hac vice*)

16

17                                        *Attorneys for Defendant The National Retirement
                                         Fund*

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMO P&A'S IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP